TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JOHNPAUL LECEDRE (Cal. Bar No. 303100)
Assistant United States Attorney
Post-Conviction and Special Litigation
    1400 United States Courthouse
    312 North Spring Street, 14TH floor
    Los Angeles, California 90012
    Telephone: (213) 894-4447
    Facsimile: (213) 894-0142
    E-mail:  johnpaul.lecedre@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                v.<br><br>RUSSELL GOMEZ DZUL,<br><br>            Defendant. | CR No. 2:25-00503-BFM<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  January 12, 2026<br>Time:        8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Brianna Fuller<br>             Mircheff |

    Plaintiff United States of America, by and through its counsel

of record, Assistant United States Attorney JohnPaul LeCedre, hereby

files its Trial Memorandum.

//

//

The Government respectfully requests leave of the Court to supplement or modify this memorandum as may be appropriate.

Dated: December 30, 2025

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
 Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

 /s/ *JohnPaul LeCedre*
JOHNPAUL LECEDRE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................1

III.  STATUS OF THE CASE..........................................3

      A.    Trial Schedule........................................3

      B.    Witnesses & Exhibits..................................3

      C.    Discovery.............................................4

      D.    Pretrial Motions......................................4

      E.    Motions In Limine.....................................5

IV.   CHARGED STATUES AND ELEMENTS................................5

      A.    Elements of the Offense...............................6

      B.    Mens Rea..............................................6

V.    PENALTIES...................................................6

VI.   LEGAL AND EVIDENTIARY ISSUES................................6

      A.    Recorded Statements by Defendant......................7

      B.    Recordings Must be Played in Open Court...............7

      C.    Transcripts of Recordings.............................7

      D.    Photographs and Maps..................................8

      E.    Duplicates............................................9

      F.    Admission of Past Recollections Recorded..............9

      G.    Cross-Examination of Defendant.......................10

      H.    Agent at Counsel Table...............................11

      I.    Jury Nullification...................................11

      J.    Jury Consideration of Potential Sentence.............12

      K.    Objections in the Presence of the Jury...............13

      L.    Reciprocal Discovery and Affirmative Defenses........13

      M.    Notice of Affirmative Defense........................14

      N.    Defense Witness Subpoenas and Prospective Motion to

        Quash...................................................14

VII. CONCLUSION....................................................15

**TABLE OF AUTHORITIES**

*Brady v. Maryland*, 373 U.S. 83 (1963)..................................4

*Crawford v. Washington*, 541 U.S. 36 (2004).........................10

*Giglio v. United States*, 405 U.S. 150 (1972)........................4

*Ohler v. United States*, 529 U.S. 753 (2000)........................10

*Shannon v. United States*, 512 U.S. 573 (1994).....................12

*United States v. Young*, 470 U.S. 1 (1985)..........................12

*United States v. Cuozzo*, 962 F.2d 945 (9th Cir. 1992).............11

*United States v. Lizarraga-Tirado*, 789 F.3d 1107 (9th Cir. 2015)....9

*United States v. May*, 622 F.2d 1000 (9th Cir. 1980)................8

*United States v. Miranda-Uriarte*, 649 F.2d 1345 (9th Cir. 1981)....11

*United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996),............7

*United States v. Oaxaca*, 569 F.2d 518 (9th Cir. 1978).............8

*United States v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012)..........10

*United States v. Perea-Rey*, 680 F.3d. 1179 (9th Cir. 2012).........9

*United States v. Powell*, 955 F.2d 1206 (9th Cir. 1992)............11

*United States v. Sanchez*, 914 F.2d 1355 (9th Cir. 1990)...........6

*United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990).............9

*United States v. Span*, 970 F.2d 573 (9th Cir. 1992)...............14

*United States v. Stearns*, 550 F.2d 1167 (9th Cir. 1977)...........8

*United States v. Turner*, 528 F.2d 143 (9th Cir. 1975).............9

*United States v. Urena*, 659 F.3d 903 (9th Cir. 2011)..............14

*United States v. Young*, 248 F.3d 260 (4th Cir. 2001)..............13

*Zal v. Steppe*, 968 F.2d 924 (9th Cir. 1992).......................11

**STATUTES**

18 U.S.C. § 111..............................................5, 6, 14

18 U.S.C. § 3500..................................................4

**RULES**

Fed. R. Crim. Pro. 16...............................................4

Fed. R. Evid 801...................................................7

Fed. R. Evid. 902..................................................9

Fed. R. Evid. 1003.................................................9

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      Defendant Russell Gomez Dzul (hereinafter, "Defendant") is

4  proceeding to trial on a Class A misdemeanor count for Assault on a

5  Federal Officer or Employee, as outlined in the Information, filed in

6  this case on June 18, 2025. (Dkt. 12).

7

**II.   STATEMENT OF FACTS[1]**

8      The government provided a cited and annotated statement of facts

9  in its Motion <u>in Limine</u> to Exclude Improper Evidence. (Dkt. 68). It

10 is substantially recounted here.

11     On June 7, 2025, federal agents with CBP were conducting

12 immigration enforcement operation in Los Angeles County as part of a

13 special enforcement detail. These included agents O.I. and L.M. whose

14 normal duty station is several hours south of Los Angeles, near the

15 U.S. – Mexico border. The agents were driving marked patrol vehicles

16 and wearing uniforms or other markings that readily and publicly

17 identified them as law enforcement. During a patrol in a residential

18 area in the Inglewood area of Los Angeles County, the agents

19 encountered and detained Defendant. Defendant was and is in fact

20 undocumented and without legal right to be in the United States.

21     Agents detained and placed Defendant in handcuffs and into the

22 rear passenger compartment of the vehicle. Shortly after, while the

23 agents, who included testifying victim O.I., and testifying witness,

24 L.M., were preparing to depart the area, a hostile crowd gathered

25 around their marked government vehicle, menacing the agents by

26

27      [1] This reflects the anticipated evidence, not all of which will be
presented at trial for the reasons set forth within this memorandum. The
Government reserves the right to revise the factual summary in advance of

28 trial.

1

yelling and throwing objects at the agents and their vehicles, including causing significant damage to the vehicles. Sensing that they were in danger, the agents communicated to the crowd to maintain distance from their vehicles, while showing and pointing canisters of pepper spray. Id.

To hasten their departure from the neighborhood, Agent L.M. opened the right rear door of the marked CBP vehicle to allow for O.I. to enter the rear passenger compartment of the vehicle, where Defendant was sitting. Immediately upon doing so, Defendant attempted to escape from the vehicle by shifting his body out of the open door while yelling for the crowd's help. This appeared to have the effect of further stoking the crowd.

Agent O.I. then placed his body in the threshold of the open door to prevent Defendant from escaping—all while facing outward to ensure the crowd did not interfere with his duties or endanger him or his fellow agents. Defendant continued to push and kick O.I., at one point, placing his leg between O.I.'s legs and forcibly kicking O.I. in the groin area. This caused O.I. to visibly react in pain.

Shortly after, Agents L.M. and O.I. were able to pull Defendant back into the CBP vehicle, whereupon it left the area with Defendant secured. Defendant was subsequently placed into CBP custody. Defendant made several statements to Agents while in the vehicle and in subsequent post-arrest interviews. The government's position is that those statements, while relevant to his initial detention for immigration matters, is irrelevant to the charged assault and will not seek to admit them into trial.

III.  **STATUS OF THE CASE**

    **A.  Trial Schedule**

    <u>Trial Date</u>: Trial by jury has not been waived. Jury trial is set to begin on January 12, 2026.

    <u>Estimated Time</u>: The estimated time for the presentation of the Government's case-in-chief is one day or less, exclusive of the time needed for jury selection. Defendant has not indicated whether he will present a case.

    <u>Defendant</u>: Defendant was released on bond pending trial. (Dkt. 14). Separate from the instant federal criminal case, he is currently in the administrative custody of immigration authorities due to his lack of lawful status in the United States. The United States Attorney's Office ("USAO") and Department of Homeland Security ("DHS") will make necessary coordination for Defendant to personally attend trial and any other required hearings. There are no other defendants or related cases in this matter.

    **B.  Witnesses & Exhibits**

    The Government has filed its Witness List, dkt. 70, and expects to call the following two witnesses during its case-in-chief:

- Agent O.I[2], United States Customs and Border Protection ("CBP") (victim); and

- Agent L.M., CBP

    The Government respectfully requests leave to update this list, if necessary, in advance of its case-in-chief. The Government may call additional witnesses in rebuttal, depending on whether

---

[2] The parties have stipulated to a protective order to refer to the main anticipated government witnesses in this case as "O.I." and "L.M." in public filings for the reasons set for in their stipulated request for and the protective order itself. Dkts. 66, 67.

Defendants call any witnesses, and on the testimony such witnesses give.

The Government has also filed its Exhibit List, dkt. 75, and will seek to admit approximately five exhibits, which will include body camera video excerpts, social media video excerpts, a photo, and a map.

**C.    Discovery**

The United States has complied with its discovery obligations under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act (18 U.S.C. § 3500), and all other applicable authorities. All known discoverable material, including exculpatory and impeachment information, has been disclosed. The government will continue to supplement as required.

**D.    Pretrial Motions**

The parties litigated and resolved pretrial motions during the pretrial conference on Wednesday, November 12, 2025. Defendant filed two pretrial motions: 1) A motion to suppress post-arrest evidence on both Fourth and Fifth Amendment bases, dkt. 43, and 2) a motion to compel purported Grand Jury Transcripts in this case. Dkt. 44. The government opposed both and did not file any pretrial motions.

With respect to the Motion to Suppress, the government filed its opposition on October 16, 2025. (Dkt. 50). The Court issued its ruling on November 21, 2025. (Dkt. 65). The Court found that the initial interaction constituted an unlawful arrest; however, it also found that the alleged assault constituted an intervening circumstance that attenuated the unlawful arrest. Dkt. 65 (Minute

Order) at pp. 5-6. While the Court found that the Miranda advisements given to Defendant following his arrest were sufficient, the Court found it unnecessary to rule whether the statements were excludable as fruit of the poisonous tree, as the government had indicated to the Court that it did not intend on introducing any of the statements during its case in chief. Id. at pp. 9-10.

With respect to the Defendant's Motion to Compel Production of Grand Jury Transcripts, the Government filed an opposition on October 16, 2025. (Dkt. 49). The Court issued its ruling on November 14, 2025, denying the motion. (Dkt. 64).

### E.   Motions In Limine

The government has filed three motions in Limine:

     1) Motion to Exclude Improper Evidence and Argument Challenging the Legality of the Detention, dkt. 68;

     2) Motion to Exclude Improper Evidence and Argument Regarding Immigration Policy, dkt. 72; and

     3) Motion to Exclude Reference to Defendant's Interviews, dkt. 74.

Defendant has filed oppositions to the first of the two, and a non-opposition to the government's third motion in limine. Defendant has not filed any motions in limine.

### IV.  CHARGED STATUES AND ELEMENTS

Defendant is charged in the single-count Information with Simple Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1). That statute makes it crime when someone "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [officers and employees of

the United States] while engaged in or on account of the performance of official duties." When the acts constitute "simple assault," as charged here, the maximum term of imprisonment is one year. 18 U.S.C. § 111(a)(2).

### A.    Elements of the Offense

The elements of the offense are: (1) Defendant forcibly assaulted O.I.; and (2) Defendant assaulted O.I. while O.I. was engaged in, or on account of, his official duties.

If defense makes a prima facie showing of a claim of self-defense against excessive force, the Government must prove that Defendant did not act in reasonable self-defense.

### B.    Mens Rea

Section 111 is a general intent crime in the Ninth Circuit, and no intent to injure is required to prove this offense. United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990).

## V.    PENALTIES

A Class A misdemeanor under Title 18 of the U.S. Code is punishable by a maximum of one year of imprisonment to be followed by a one-year period of supervised release; five years of probation; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

## VI.    LEGAL AND EVIDENTIARY ISSUES

The Government will not exhaustively recite every legal issue in this case below but seeks to identify the issues below in order to foster efficiency and transparency of legal issues during this trial.

1

### A.    Recorded Statements by Defendant

2      As outlined above and during prior hearings, the government will

3 not seek to admit any recorded statements by Defendant, other than

4 his incidental exhortations on the body camera during his detention.

5 The government contends, and details within its Motion in Limine at

6 dkt. 74, that Defendant's statements regarding his immigration status

7 and reason for fleeing, are irrelevant to any of the elements of the

8 charged offense. The defense has filed a non-opposition to that

9 motion. (Dkt. 78).

10     ### B.    Recordings Must be Played in Open Court

11     All duly admitted recorded conversations must be played in open

12 court. Allowing jurors to take into the jury deliberation room

13 recorded conversations that were not played in open court is

14 structural error requiring automatic reversal if a defendant objects

15 to allowing the jurors to have the unplayed calls in the jury room.

16 United States v. Noushfar, 78 F.3d 1442, 1444-46 (9th Cir. 1996), as

17 amended, 140 F.3d 1244 (9th. Cir. 1998). Accordingly, if the jury

18 wishes to hear playback of a recording during deliberations, then

19 such playback must occur in open court with all parties present and

20 the entire requested recording must be played back.

21     ### C.    Transcripts of Recordings

22     The body camera video and social media video are largely in

23 English and depict commands and exhortations by agents and local

24 civilians. Recorded yelling and verbal commands care not hearsay to

25 provide context for the situation or Defendant's actions and to

26 explain the effect on the listener. Fed. R. Evid 801(c).

27

28

For English-only recordings, the recording itself is the evidence, and a transcript of the recording may be provided to the jury in open court and/or streaming on the screen as the recording exhibit is played, as an aid in following the conversation on the recording. The Government intends to provide the jury, the Court, and the defense with transcripts of the excerpted conversations as aids in following the conversations. English-language transcripts will not be admitted into evidence, nor will they be allowed to be taken into the jury room. The transcripts will be provided to the jury for any playback of recordings during trial or deliberations.

### D.    Photographs and Maps

The United States intends to introduce photographs of the various individuals and locations relevant to the case. Photographs are generally admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977). Photographs should be admitted so long as they fairly and accurately represent the event or object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

The Government also may display maps obtained from Google Earth (or a similar source) as demonstratives to aid the jury in understanding where and how the charged transactions occurred. The maps will be authenticated by law enforcement officers who were percipient witnesses as to the area the maps depict as they were present in the depicted area surveilling the transaction when it occurred.

The admission of demonstrative evidence such as maps that assists the understanding of the trier of fact is a matter committed to the sound discretion of the trial court. United States v. Turner, 528 F.2d 143, 167-68 (9th Cir. 1975). The Court may properly admit maps from Google Earth because they are not hearsay, especially when a witness familiar with the area testifies about them. United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109 (9th Cir. 2015). The Court may also take judicial notice of maps, including on-line maps and satellite images. See United States v. Perea-Rey, 680 F.3d. 1179, n.11 (9th Cir. 2012).[3]

### E.    Duplicates

"A duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

### F.    Admission of Past Recollections Recorded

To the extent that any Government witness's memory does not fully capture the events relevant to the instant charge, the government may seek to refresh the witness's present recollection using his past recollections recorded and made or adopted when the information was fresh in the witness's memory. To the extent that a witness's prior written statements do not in fact refresh his

---

[3] Under Federal Rule of Evidence 902, certain items of evidence are self-authenticating. Federal Rule of Evidence 902(5) (Official Publications) covers "[a] book, pamphlet, or other publication purporting to be issued by a public authority." The United States Geological Survey maintains a United States National Map at website address http://viewer.nationalmap.gov/viewer/. Maps from this website are self-authenticating. The maps from this website can be used to verify the accuracy of the maps the government is offering.

1    recollection, the Government may seek to have such statements read

2    into evidence as recorded recollections, pursuant to Federal Rule of

3    Evidence 803(5). See, e.g., United States v. Orm Hieng, 679 F.3d

4    1131, 1143 (9th Cir. 2012) (holding that a report prepared by a

5    detective who testified that it accurately reflected his knowledge

6    and was made when it was fresh in his mind fell "comfortably within

7    the exception for recorded recollections" pursuant to Fed. R. Evid.

8    803(5)). Since the authors of any such statements will be available

9    for cross-examination by the defense, their admission will not

10   violate defendant's confrontation rights under Crawford. Crawford v.

11   Washington, 541 U.S. 36, 60 n.9 (2004) ("Finally, we reiterate that,

12   when the declarant appears for cross-examination at trial, the

13   Confrontation Clause places no constraints at all on the use of his

14   prior testimonial statements").

15       **G.   Cross-Examination of Defendant**

16       The Government is unaware whether Defendant intends to testify

17   at trial. If Defendant does testify, the Government should be

18   permitted fully to cross-examine him because a defendant who

19   testifies at trial waives his right against self-incrimination and

20   subjects himself to cross-examination concerning all matters

21   reasonably related to the subject matter of his testimony. See Ohler

22   v. United States, 529 U.S. 753, 759 (2000) ("It has long been held

23   that a defendant who takes the stand in his own behalf cannot then

24   claim the privilege against cross-examination on matters reasonably

25   related to the subject matter of his direct examination."). A

26   defendant has no right to avoid cross-examination on matters which

27   call into question his claim of innocence. United States v. Miranda-

28

1  *Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The scope of a
2  defendant's waiver is co-extensive with the scope of relevant cross-
3  examination. *United States v. Cuozzo*, 962 F.2d 945, 948 (9th Cir.
4  1992).

5  **H.  Agent at Counsel Table**

6  Under Rule 615, investigative agents are permitted to sit at
7  counsel table throughout the trial even though the "agent is or may
8  be a witness" because his or her "presence may be extremely important
9  to government counsel, especially when the case is complex or
10  involves some specialized subject matter." Rule 615, Notes of
11  Committee on the Judiciary, Senate Rpt. No. 93-1277.

12  **I.  Jury Nullification**

13  The Court should exclude any evidence or argument relating to
14  any possible jury nullification defense. It is well-established that
15  a defendant does not have a right to a jury nullification
16  instruction. *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir.
17  1992). Having no right to seek jury nullification, defendant has no
18  right to present evidence relevant only to such a defense. *Zal v.*
19  *Steppe*, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring)
20  ("[N]either a defendant nor his attorney has a right to present to a
21  jury evidence that is irrelevant to a legal defense to, or an element
22  of, the crime charged. Verdicts must be based on the law and the
23  evidence, not on jury nullification as urged by either litigant."). 
24  And, in any event, under Federal Rules of Evidence 401 and 403, such
25  arguments or evidence are not relevant to any valid defense to the
26  offense charged and will unnecessarily confuse the issues and mislead
27  the jury.

28

1   The government has addressed this issue at length in its Motion

2   in Limine to Exclude Evidence Regarding the Legality of Defendant's

3   Detention / Arrest, dkt. 68, and its Motion to Exclude Evidence or

4   Argument Regarding Immigration Policy, dkt. 72. Because of the

5   subject matter involved in this case, there is significant risk for

6   jury nullification or distraction from the charged offense. The

7   government asks the Court to address those issues outlined in its

8   Motions in Limine

9       **J.    Jury Consideration of Potential Sentence**

10      It is an "established axiom that it is inappropriate for a jury

11  to consider or be informed of the consequences of their verdict."

12  Shannon v. United States, 512 U.S. 573, 578 (1994) (internal

13  quotations omitted). The jury's duty is to determine their verdicts

14  based solely on the evidence and the law as instructed by the Court;

15  sentencing is the exclusive province of the Court. References by

16  Defendants to potential punishments—including the applicable

17  mandatory minimum—would serve no legitimate purpose and would only

18  invite jury nullification. Such commentary risks unfair prejudice,

19  confusion of the issues, and a verdict based on sympathy, rather than

20  law. Ultimately, lawyers "should refrain from argument which would

21  divert the jury from its duty to decide the case on the evidence by

22  injecting issues broader than the guilt or innocence of the accused

23  under the controlling law or by making predictions of the

24  consequences of the jury's verdict." United States v. Young, 470 U.S.

25  1, 9, no. 7 (1985) (citing ABA Standard for Criminal Justice 4-7.8).

26

27

28

12

**K.    Objections in the Presence of the Jury**

For the same reasons as above, parties should refrain from making misconduct or discovery related objections in front of the jury. Such tactics serve no evidentiary purpose and improperly suggest to the jury that the Government has withheld information or otherwise acted in bad faith. These insinuations are highly prejudicial, risk confusing the jury, and encroach on matters reserved to the Court. Any discovery disputes or claims of misconduct should be raised outside of the presence of the jury to ensure a fair, orderly, and efficient trial.

**L.    Reciprocal Discovery and Affirmative Defenses**

Defendant has not produced to the Government any reciprocal discovery to which the government may be entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure. Therefore, to the extent defendants attempt to introduce or use any documents at trial that he has not produced, or seeks to rely on an undisclosed affirmative defense, the government reserves the right to object and to request that the Court exclude those undisclosed documents or affirmative defense. See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

In addition, Defendants also have not provided the Government with any information regarding the witnesses they intends to call at trial. The Government needs the opportunity to evaluate permissible

13

1  impeachment material, in order to properly cross-examine those

2  witnesses, and the Government does not wish to delay the trial by

3  requesting avoidable recesses. In order to eliminate the need for the

4  government to request a brief recess after the direct testimony of

5  any of the defense witnesses, the Government asks that the Court

6  require Defendants to provide the Government with any information

7  necessary to collect potential impeachment material, including the

8  full name and birthdate of any witnesses (for purposes of conducting,

9  e.g., criminal history inquiries) at the outset of the defense case.

10       **M.    Notice of Affirmative Defense**

11       Defendant has indicated an intent to pursue a self-defense

12  theory but has provided no substantive offer of proof supporting it.

13  Self-defense in a prosecution under 18 U.S.C. § 111 requires evidence

14  from which a reasonable jury could find that Defendant reasonably

15  believed he faced an immediate use of excessive force by the officer

16  threatening serious bodily harm, and that he used no more force than

17  necessary in response. Comment to Ninth Circuit Model Crim Jury

18  Instr. 8.3; United States v. Urena, 659 F.3d 903, 907 (9th Cir.

19  2011). There is no right to resist an unlawful arrest alone. United

20  States v. Span, 970 F.2d 573, 579-80 (9th Cir. 1992).

21       **N.    Defense Witness Subpoenas and Prospective Motion to Quash**

22       Defendant has notified the government that it intends to call as

23  many as eleven agents as witnesses in its defense. Most of the named

24  witnesses are non-percipient or otherwise duplicative of the

25  anticipated testimony to be offered by the government. The government

26  has agreed to accept its subpoenas on behalf of the federal agents;

27

28

14

however, it reserves the right to move to quash the subpoenas for any legally acceptable reason.

**VII. CONCLUSION**

    The Government respectfully requests leave to file such supplemental memoranda as may become necessary during trial preparation and trial.