TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JOHNPAUL LECEDRE (Cal. Bar No. 303100)
Assistant United States Attorney
Post-Conviction and Special Litigation Section
     1400 United States Courthouse
     312 North Spring Street, 14TH floor
     Los Angeles, California 90012
     Telephone: (213) 894-4447
     Facsimile: (213) 894-0142
     E-mail:  johnpaul.lecedre@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:25-00503-BFM |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S REPLY TO DEFENDANT'S OMNIBUS OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE* |
| RUSSELL GOMEZ DZUL, | |
| Defendant. | |

Plaintiff, UNITED STATES OF AMERICA, by and through its attorney of record, Assistant United States Attorney JohnPaul LeCedre hereby files this Reply to Defendant's Omnibus Opposition to the Government's Motions in Limine in the above-entitled matter.

//

//

This reply is based upon the attached Memorandum of Points and Authorities, the files and records in this case, and such further evidence and argument as the Court may request or permit.

Dated: January 4, 2026              Respectfully submitted,

                                          TODD BLANCHE
                                        Deputy Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                          Attorney

                                        ALEXANDER B. SCHWAB
                                        Assistant United States Attorney
                                        Acting Chief, Criminal Division

                                            /s/ *JohnPaul LeCedre*
                                        JOHNPAUL LECEDRE
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The defense opposition illustrates exactly why the government's motions should be granted. Stripped of rhetoric, the defense advances a simple but legally incorrect proposition: that because Defendant's arrest was subsequently ruled unlawful, the jury should hear evidence of that arrest and reassess law-enforcement conduct post hoc as part of deciding a separate criminal offense. That is not how criminal trials work. The legality of an arrest is a question for the Court, not the jury, and it does not become trial evidence merely because the charged offense occurred after custody began.

That principle is settled in this Circuit. An officer does not step outside the performance of official duties—and a defendant does not gain license to resist or assault—because that defendant later claims the officer acted unlawfully, even if the Court concurs. United States v. Span, 75 F.3d 1383, 1389 (9th Cir. 1996) ("[T]here is no right to resist an unlawful arrest simply because it is unlawful, e.g., without probable cause..."). Nor may a defendant use "context," "completeness," or credibility as a cudgel to relitigate suppression rulings or inject constitutional questions into the jury's deliberations. Defendant asks that the Court openly flout Ninth Circuit precedent and submit litigated legal questions to the jury on issues reserved to the Court. It is an invitation to error that the Court should decline to accept.

**II.   SUPPLEMENTAL BACKGROUND**

Prior to trial, the Court ruled on the legality of Defendant's detention as a matter of law, outside the presence of the jury. Dkt. 65. No element of the charged offense requires the government to

1

prove the lawfulness of that detention, and no party contends otherwise. As outlined in the Government's statement of facts, dkt. 68, the charged conduct is alleged to have occurred after Defendant was handcuffed and secured in a government vehicle, during a distinct encounter that followed the initial detention in time and place.

The government does not rely on the legality of the detention to establish any element of 18 U.S.C. § 111, a general intent crime, and does not seek to introduce any evidence regarding arrest legality, the method of the arrest, immigration policy, or enforcement authority. The defense, by contrast, seeks to place those issues before the jury notwithstanding the Court's prior rulings and their lack of relevance to the elements the jury must decide.

**III. ARGUMENT**

    **A.    The Defense May Not Relitigate Arrest Legality or Suppression Issues Before the Jury**

The defense opposition rests on an assumption that is not merely legally unsupported but also unworkable in practice: that when a court finds an arrest unlawful, evidence of that arrest must then be presented to the jury if a defendant is later charged with a *separate* offense committed during custody. If that were correct, suppression rulings would functionally cease to have legal effect and would instead become trial evidence whenever a defendant committed a subsequent crime. That is not, and has never been, the rule.

The government asks that the Court consider the practical implications of the defense's position. For example, a defendant is arrested without probable cause for suspected drunk driving later assaults an officer in the patrol car. Under the defense's proffered

2

theory, the jury would be entitled to hear evidence of the unlawful stop and to reassess the officer's conduct as part of deciding a separate assault charge. The same would be true if a defendant unlawfully detained for suspected narcotics trafficking later commits a firearms offense, or if a defendant taken into custody after an unlawful search later destroyed evidence or attempted escape. In each case, the legality of the initial arrest—already resolved by a court—would become fodder for the jury, *even though it is not an element of the offense and has no bearing on whether the charged conduct occurred*. The Ninth Circuit has never sanctioned such a regime.

That is because Fourth Amendment legality is a question for the Court, not the jury. Once the Court has ruled, the remedy for unlawful conduct is suppression, not a second adjudication before the trier of fact under the guise of "context" or "background." Allowing jurors to revisit arrest legality would require them to decide constitutional questions they will not be instructed to decide, would divert the trial into collateral disputes, and would invite verdicts based on disagreement with law-enforcement policy and conduct rather than the elements of the charged offense.

The Ninth Circuit has expressly foreclosed this approach. In Span, the court expressly rejected the notion that a defendant may justify resistance or assault by challenging the legality of police conduct. Span, 75 F.3d at 1389-90. That principle does not turn on the label attached to the evidence. A defendant may not relitigate suppression rulings by calling them "context," nor may credibility be used as a shallow pretext to place constitutional determinations before the jury.

3

What the defense seeks here is precisely what Span forbids: permission to present arrest legality and constitutional compliance as trial issues for the jury to weigh when determining guilt on a separate offense. Accepting that request would require the Court to treat suppression rulings as provisional, to submit legal questions to the jury, and to abandon the settled distinction between pretrial constitutional adjudication and trial proof. The Court should reject that approach and preclude evidence and argument designed to improperly relitigate arrest legality, an irrelevant issue, before the jury.

### B. Unlawful Detention or Arrest Does Not Remove Officers from the Performance of Official Duties as a Matter of Law

The defense's next move follows directly from the first—and fails for the same reason. Defendant contends that because his arrest was later adjudicated to be defective, the officers were no longer performing official duties within the meaning of 18 U.S.C. § 111. See Dkt. 76 (Defense Omnibus Opposition) at p. 3 (alleging that cross-examining the agent about an unlawful arrest may be useful to "[cut] against the government's argument that O.I. acted within the scope of his official duties"). That legal posture is foreclosed by binding Ninth Circuit precedent. Span, 75 F.3d at 1389-90. The "official duties" inquiry does not turn on the legality of an officer's conduct, but on whether the officer was acting within the scope of their employment, as opposed to being engaged in a personal frolic. Id. The operative question is "whether the officer's actions fall within his agency's overall mission," not "whether the officer is abiding by laws and regulations in effect at the time of the

incident." United States v. Ornelas, 906 F.3d 1138, 1149 (9th Cir. 2018) (internal quotations omitted).

If a legally defective detention or arrest stripped officers of § 111 protection, the statute would carry force only when officers acted perfectly. That is not the law. An officer executing a warrant later found defective, conducting a stop later found unsupported by reasonable suspicion, or conducting enforcement later found be jurists to be constitutionally overreaching does not retroactively affect whether an officer is acting within the scope of his or her employment for purposes of the "official duties" element of § 111. The Ninth Circuit has rejected precisely that contention because it would condition federal officer protection on after-the-fact constitutional litigation rather than on the officer's role and function at the time of the encounter.

Span makes this explicit: a defendant may not justify resistance or assault by challenging the legality of police conduct and may not place those questions before the jury. 75 F.3d at 1389-90. A defendant may only resist if there is *immediate excessive force*. The defense's effort to reframe "official duties" as a factual question for the jury divorced from this legal framework simply asks the Court to disregard binding precedent. Section 111 does not permit jurors to decide whether officer forfeited federal protection based on alleged post hoc constitutional defects. The Court should reject Defendant's invitation to error.

//

//

5

1  **C.  Self-Defense Does Not Justify Admission of Pre-Detention Evidence or Expanded Narratives**

The defense next invokes self-defense to justify admission of evidence related to Defendant's apprehension and arrest earlier in the day of the incident. That argument misstates yet again misstates the law. In § 111 cases, self-defense is a limited, affirmative doctrine confined to whether a defendant reasonably responded to *immediate* use of *excessive* force. It does not authorize the admission of pre-detention evidence, alleged constitutional violations, or generalized critiques of law enforcement conduct. Contending self-defense in a § 111 charge does not permit a defendant to reframe prior law enforcement actions as provocation or to justify assaultive conduct by a reference to how an encounter began. Nor may a defendant rely on alleged arrest illegality to expand the scope of evidence admitted at trial. Allowing such an approach would convert an exceedingly narrow affirmative defense into a vehicle for relitigating arrest legality and injecting collateral issues into the jury's deliberations—precisely what Ninth Circuit precedent forbids.

The defense's position would effectively entitle any defendant charged under § 111 to introduce arrest-history evidence to argue state of mind or justification, regardless of temporal or legal separation from the charged conduct. This is not self-defense; it is narrative expansion untethered from the elements of the offense and legal reality. If the Court determines that the self-defense instruction is warranted—still an open issue, evidence must be strictly confined to the alleged used of force *at the time of the charged conduct* and may not be used to admit otherwise irrelevant and highly prejudicial material.

6

**D.   The Defense's "Completeness" and Rule 403 Arguments Invert the Governing Standards**

The defense repeatedly characterizes exclusion of arrest-related evidence as unfairly "misleading" or "incomplete." See, e.g., Dkt. 76 at pp. 6-7. That framing reverses the governing evidentiary inquiry. The jury is not entitled to hear all background facts or every antecedent event; it is entitled to hear evidence that is relevant to the elements of the charged offense and whose probative value is not substantially outweighed by the dangers identified in Rule 403.

Here, the probative value of the legality of the arrest or pre-detention conduct is nearly non-existent even under the most generous interpretation. None of that evidence bears on whether Defendant assaulted a federal officer or whether the officer was performing official duties within the meaning of § 111 when the assault occurred. By contrast, the risk of unfair prejudice and jury confusion is enormous. Introducing such evidence would invite jurors to evaluate constitutional compliance, assess institutional motives, and resolve collateral disputes that are not theirs to decide. That is *precisely* the kind of diversion Rule 403 is designed to prevent.

Nor does Rule 106 or any notion of "completeness" require admission of otherwise inadmissible subject matter. The government is not offering a misleading fragment of evidence that requires contextual correction; it is offering evidence of the entirety of the charged encounter itself. The defense's demand for additional context is not about accuracy. It is an attempt at expansion—seeking to introduce legally irrelevant material to reframe the case around issues the jury cannot properly consider.

7

1  The defense's position also exposes its own limiting principle.
2  no defendant would seriously argue that evidence of an unlawful
3  arrest must be presented to the jury whenever a later, unrelated
4  offense occurs in custody. If a defendant were arrested for a
5  socially stigmatizing offense (e.g. child abuse or a sexually charged
6  crime) later assaulted an officer or attempted escape, the defense
7  would not insist that the jury hear the details of that arrest in the
8  name of "context." They would correct recognize that the arrest—
9  lawful or not—has no bearing on the later charged conduct. The
10 evidentiary rules of relevance do not change based on whether the
11 background facts may generate sympathy for a defendant. If arrest
12 illegality would be irrelevant in those cases, it is irrelevant here.
13  Rule 403 does not permit evidence simply because it is
14 emotionally compelling or rhetorically effective. Where, as here, the
15 at-best marginal probative value of the proffered evidence is far
16 outweighed by the risk of confusion, prejudice, and distraction from
17 the elements of the offense, exclusion is not only appropriate—it is
18 required.

**E. The Defense's Proposed Curative Instruction Confirms the Impropriety of Its Theory**

21  The defense's proposed alternative—asking that the Court
22 instruction the jury that Defendant's arrest was unlawful—confirms
23 why the evidence itself is inadmissible. Juries are not instructed on
24 suppression rulings, Fourth Amendment violations, or constitutional
25 determinations resolved by the Court. Such matters are legal
26 questions committed to the Court, and informing the jury of those
27 rulings would improperly invite the trier of fact to decide the case
28 on grounds unrelated to elements of the charged offense.

8

An instruction advising the jury that the arrest was unlawful would do precisely what the defense is not permitted to do directly: place constitutional compliance at the center of the jury's deliberations. It would distort the evidentiary framework, confuse the jury's role, and improperly signal that arrest legality bears on guilt under § 111, when is plainly does not. The request for such an instruction underscores that the defense's objective is not clarification, but substitution—asking the jury to weigh issues the law assigns to the Court. The Court should reject that request and grant the motions in limine.

**IV.  CONCLUSION**

The defense's position is not a close call. It asks for the Court to permit the jury to reconsider legal rulings, weigh constitutional compliance, and decide guilt based on issues the Ninth Circuit has expressly precluded from the jury's province. This is not a matter of evidentiary discretion; it is a direct conflict with controlling law. The legality of Defendant's arrest does not become evidence because Defendant later chose to assault a federal officer, and § 111 does not condition federal protection on a jury's retrospective assessment of law-enforcement conduct.

Accepting the defense's theory would collapse the distinction between pretrial constitutional adjudication and trial proof, convert suppression rulings into jury questions, and effectively rewrite § 111 in this Circuit to accommodate their client's unfortunate factual reality. The Ninth Circuit has long since rejected that framework, and the government respectfully asks this Court to follow those decisions. The motions in limine should be granted in full.

9